UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Joel J. Malek, *individually and on behalf of all
others similarly situated*,

                     Plaintiff,

      -against-

AXA Equitable Life Insurance Co., Leonard
Feigenbaum, and Does 1-1000,

                 Defendants.
-------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

**MEMORANDUM & ORDER**
20-CV-04885 (DG) (AYS)

      On October 9, 2020, Plaintiff Joel J. Malek filed the Complaint in this action,

individually and on behalf of all others similarly situated, against Defendants AXA Equitable

Life Insurance Company ("Equitable"); Leonard Feigenbaum (together with Equitable, the

"Moving Defendants"); and Does 1-1000, who are alleged to be certain insurance agents and

brokers (together with Feigenbaum, the "Broker Defendants," and collectively with Equitable

and Feigenbaum, "Defendants"). *See generally* Complaint ("Compl."), ECF No. 1; *see also*

Compl. ¶¶ 13-15.[1]  Plaintiff alleges that Equitable "engineered a deceptive marketing conspiracy

implemented by" the Broker Defendants "to trick life insurance consumers into replacing their

existing whole life policies into more costly Equitable universal life insurance policies that had

lower rates of return and higher risk." *See* Compl. ¶ 1.  Plaintiff asserts that he brings this action

as a class action pursuant to Federal Rule of Civil Procedure 23 and seeks certification of a

"Nationwide Class" with regard to the conduct alleged in the Complaint. *See* Compl. ¶ 87.

Plaintiff also seeks certification of various sub-classes: a sub-class of all New York residents

---

[1]  Two paragraphs in the "Jurisdiction and Venue" section of the Complaint are mislabeled as
paragraphs 15 and 16.  The Court does not reference those paragraphs herein.

who are members of the Nationwide Class (the "New York Sub-Class") and sub-classes of all residents of each of the states identified in Plaintiff's Fifth Cause of Action who are members of the Nationwide Class (together, the "State Sub-Classes"). *See* Compl. ¶¶ 88-89.

Plaintiff's Complaint asserts seven causes of action: (1) breach of implied covenant of good faith and fair dealing, against Equitable; (2) breach of contract, against Equitable; (3) violations of New York Insurance Law § 4226, against all Defendants; (4) violation of New York General Business Law § 349, on behalf of the New York Sub-Class and against all Defendants; (5) violations of the state unfair business practices statutes, on behalf of the State Sub-Classes and against all Defendants; (6) unjust enrichment, against the Broker Defendants; and (7) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), seeking civil remedies against all Defendants. *See* Compl. ¶¶ 97-158.

Pending before the Court are Defendant Equitable's motion to dismiss Plaintiff's Complaint, *see* Defendant Equitable's Notice of Motion to Dismiss the Complaint, ECF No. 33; Defendant Equitable's Memorandum of Law in Support ("Eq. Br."), ECF No. 34; Defendant Equitable's Reply Memorandum in Support ("Eq. Reply"), ECF No. 39, and Defendant Feigenbaum's motion to dismiss Plaintiff's Complaint, *see* Defendant Feigenbaum's Notice of Motion to Dismiss the Complaint, ECF No. 36; Defendant Feigenbaum's Memorandum of Law in Support ("Feigenbaum Br."), ECF No. 37; Defendant Feigenbaum's Reply Memorandum of Law ("Feigenbaum Reply"), ECF No. 40.  Plaintiff opposes the Moving Defendants' motions. *See* Plaintiff's Memorandum of Law in Opposition ("Pl. Br."), ECF No. 38.

For the reasons set forth below, the Moving Defendants' Motions to Dismiss are granted and the Complaint is dismissed.

## BACKGROUND

I.    **Factual Background**[2]

As alleged in the Complaint, Plaintiff bought a whole life insurance policy from Prudential Life Insurance in 1977 and bought a second whole life insurance policy from MONY in 1987.  *See* Compl. ¶ 39.

Plaintiff alleges that, in 2010, Feigenbaum suggested that Plaintiff surrender his whole life insurance and purchase replacement insurance with Equitable.  *See* Compl. ¶ 40.  Plaintiff purchased a replacement policy in 2010.  *See* Compl. ¶ 75.

Plaintiff alleges that, on or about September 29, 2010, Feigenbaum "prepared and communicated a deceptive document" that "misstated the value of the replacement policy [Plaintiff] purchased."  *See* Compl. ¶ 41.  Plaintiff further alleges that, in December 2010, Feigenbaum sent a letter to Plaintiff "touting the benefits" of Equitable's new indexed universal life insurance production and recommending that Plaintiff have a new policy issued as the Indexed Universal Life policy.  *See* Compl. ¶ 42.  Plaintiff alleges that, in this letter, Feigenbaum agreed that the rate that could be earned by the policy (the "Growth Cap Rate") would be 12% per annum.  *See* Compl. ¶ 42; *see also* Compl. ¶ 80.  Plaintiff further alleges that Feigenbaum

---

[2]    "In considering a motion to dismiss for failure to state a claim, '[a] district court is normally required to look only to the allegations on the face of the complaint,'" though "[it] may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  Plaintiff and the Moving Defendants dispute whether certain documents can be considered in connection with the Moving Defendants' motions to dismiss.  *See* ECF Nos. 41-43.  At oral argument on the instant motions, counsel for Plaintiff represented that the annual statements Plaintiff received in connection with his policy are incorporated in the Complaint by reference.  *See* Transcript of March 13, 2023 Oral Argument ("Tr.") at 11; *see also* Tr. at 10, 12; Compl. ¶ 145(a).  The Court considers the annual statements – ECF Nos. 35-7 through 35-12, 35-14, 35-15, and 35-17 – in connection with the instant motions.  The Court does not consider the other documents and therefore need not resolve the dispute with regard to such documents.

provided materially false and misleading materials to Plaintiff, which misled Plaintiff as to the terms of his replacement policy.  *See* Compl. ¶ 43; *see also* Compl. ¶¶ 47-61.[3]

According to Plaintiff, "[w]hen Defendant Feigenbaum interacted with Plaintiff, he was acting in concert with Equitable to manipulate consumers into replacing their life insurance policies with risky, universal life insurance policies."  *See* Compl. ¶ 44.  Plaintiff alleges that Feigenbaum presented customers with pre-printed marketing materials provided by Equitable that were designed to manipulate customers into replacing their current life insurance with universal life insurance.  *See* Compl. ¶ 47.  The Complaint specifically identifies two categories of allegedly deceptive marketing materials presented to customers: (1) prepared illustrations purportedly showing the benefits of the replacement life insurance policies (the "Illustrations"), *see* Compl. ¶¶ 48-54, and (2) Disclosure Statements as mandated by Insurance Regulation 60 (the "Disclosure Statements"), *see* Compl. ¶¶ 55-61.  Plaintiff alleges that the Illustrations were misleading in that they, *inter alia*, included a misleading column title, used an artificially inflated interest rate assumption, and gave the impression that the non-guaranteed parts of the Illustration were guaranteed when they were not.  *See* Compl. ¶¶ 49-51.  Plaintiff alleges that the Disclosure Statement presented to Plaintiff was misleading because it, *inter alia*, failed to provide certain information in the "Agent's Statement" section, did not inform Plaintiff that Equitable would impose a 6% to 8% premium charge on the cash released by the rollover of the existing policy into the replacement, and provided incomplete disclosure as to certain other charges associated with the new replacement policy.  *See* Compl. ¶¶ 56-60.

As alleged in the Complaint, Equitable sent annual account statements to Plaintiff

---

[3]   Although the Complaint is unclear as to exactly when the policy at issue was issued, the Complaint indicates that the relevant timeframe is 2010/2011.  *See generally* Compl.

regarding the value of Plaintiff's replacement life insurance policy.  *See* Compl. ¶ 145(a); *see also* ECF Nos. 35-7 through 35-12, 35-14, 35-15, 35-17.  The statements indicated the relevant Growth Cap Rate per segment.  *See, e.g.*, ECF No. 35-7 at 4 (12% Growth Cap Rate for active segment(s)); ECF No. 35-8 at 4 (11% Growth Cap Rate for active segment(s)); ECF No. 35-9 at 7 (10% Growth Cap Rate for active segment(s)); ECF No. 35-10 at 7 (10% Growth Cap Rate for active segment(s)).  And, beginning in at least 2014, the statements provided a telephone number that policyholders could call for information about the "Current Growth Cap Rates that have been established."  *See, e.g.*, ECF No. 35-9 at 3; ECF No. 35-10 at 3; ECF No. 35-11 at 3; ECF No. 35-12 at 3.

Furthermore, as alleged in the Complaint, the Illustration Plaintiff received when he purchased his new policy informed him that there would be certain monthly charges assessed on his policy.  *See* Compl. ¶ 51 & n.2.  The annual statements that Plaintiff received summarized monthly charges assessed on Plaintiff's policy.  *See* ECF Nos. 35-7 through 35-12, 35-14, 35-15, 35-17.

Plaintiff alleges that a letter dated September 6, 2019 from an Equitable senior director for the first time informed Plaintiff that "you may have considered other information that was not disclosed in the original disclosure statement to you."  *See* Compl. ¶ 74.  Plaintiff alleges that attached to the September 2019 letter was a revised disclosure statement, which allegedly contained information that had been withheld from Plaintiff when he purchased his replacement policy in 2010.  *See* Compl. ¶ 75.  According to the Complaint, the revised disclosure statement "presented Plaintiff with radically different information and perspective as to the wisdom of purchasing replacement universal life insurance."  *See* Compl. ¶ 78.  Plaintiff alleges that the revised disclosure statement informed Plaintiff regarding certain advantages of keeping his

existing policies, including: that the contestability and suicide clause on his existing policies had expired; that the existing policy had no surrender charge while the replacement policy had a surrender charge for the first 20 years; and that the replacement policy contained a host of new charges that he did not incur on his existing insurance.  *See* Compl. ¶ 76.

Plaintiff alleges that, after receipt of the September 2019 letter, Plaintiff called Equitable and spoke to a representative regarding the revised disclosure letter.  *See* Compl. ¶ 79.  Plaintiff alleges that, in this conversation, Plaintiff made clear that he would not have purchased the replacement policy had he been provided this information in 2010 and that he wanted Equitable to provide him with a written description of his options as well as the values and current growth cap rate of his policy.  *See* Compl. ¶ 79.

According to the Complaint, in November 2019, Plaintiff received a letter from Equitable that stated that Equitable was required to request that Prudential and MONY reinstate Plaintiff's existing coverage.  *See* Compl. ¶ 80.  Plaintiff alleges that the letter, *inter alia*, did not provide any assurance that Plaintiff would be able to obtain his existing coverage, did not address the 12% maximum Growth Cap Rate Plaintiff had agreed to, indicated that Plaintiff would be responsible for additional amounts to restore his policies, and noted that if MONY and Prudential did not agree to the reinstatement, Equitable would provide a credit of $3,329 – which Plaintiff claims was "an amount far less than the upfront premiums of $66,000 that Plaintiff paid when replacing his insurance with Equitable Universal Life policy."  *See* Compl. ¶¶ 80-81.

Plaintiff alleges that, in December 2019, Plaintiff wrote a letter to Equitable requesting that they terminate his contract based on the material misrepresentations and requesting a refund based on the performance of the S&P 500 and Equitable's remediation formula, as well as surrender charges.  *See* Compl. ¶ 82.  Plaintiff avers that "Equitable however continued to

6

contest whether they were liable for their fraud."  *See* Compl. ¶ 82.

Plaintiff's Complaint additionally contains allegations regarding a "New York State Department of Finance" (the "Department") audit examination of Equitable's insurance marketing activities between 2011 and 2015.  *See* Compl. ¶¶ 30-38.  Plaintiff alleges that on May 8, 2017 the Department released a report on its examination.  *See* Compl. ¶ 30.  Plaintiff alleges that the Department's conclusions, as set forth in that report, "demonstrated that Equitable had failed in its duty to ensure that its disclosure statements consisted of full, clear and accurate information to applicants."  *See* Compl. ¶ 36.

## II.   Procedural History

On October 9, 2020, Plaintiff filed the Complaint in this action.

On April 21, 2021, the Moving Defendants filed the instant motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), which motions Plaintiff opposed.

On February 2, 2022, the Court afforded Plaintiff and the Moving Defendants an opportunity to submit additional briefing on the issues raised with respect to certain exhibits submitted in connection with Equitable's motion to dismiss.  *See* Order dated February 2, 2022. Plaintiff and the Moving Defendants subsequently filed their supplemental briefs.  *See* ECF Nos. 41-43.

On March 13, 2023, oral argument was held on the instant motions.  *See* ECF No. 46; *see also* Transcript of March 13, 2023 Oral Argument ("Tr.").  During oral argument, Plaintiff represented that he was "incorporating the annual statements" that Plaintiff received in connection with his policy into the Complaint "by reference."  *See* Tr. at 11; *see also* Tr. at 10. Plaintiff also responded to questions from the Court regarding equitable tolling, *see* Tr. at 8-11,

and regarding Plaintiff's civil RICO claims, *see* Tr. at 31-32, 34.  And, Plaintiff confirmed that

he does not seek leave to amend the Complaint in this action.  *See* Tr. at 46.

## DISCUSSION

### I.   Standard of Review

"Where a defendant raises a statute of limitations defense in a pre-answer motion to

dismiss, such a motion 'is properly treated as a Rule 12(b)(6) motion to dismiss for failure to

state a claim upon which relief can be granted.'"  *Rosario v. Loc. 1106 Transp. Works of Am.*, 29

F. Supp. 3d 153, 158 (E.D.N.Y. 2014) (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d

160, 162 (2d Cir. 1989)).  "Although a statute of limitations argument is an affirmative defense,

it is settled law that a complaint may be dismissed on statute of limitations grounds if the

complaint clearly shows the claim is out of time."  *DeSimone v. TIAA Bank, FSB*, No. 20-CV-

06492, 2021 WL 4198274, at *4 (S.D.N.Y. Sept. 14, 2021) (quotation marks omitted); *accord*

*Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir.

2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court must "accept all 'well-

pleaded factual allegations' in the complaint as true" and "'construe all reasonable inferences

that can be drawn from the complaint in the light most favorable to the plaintiff.'"  *Lynch v. City*

*of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020) (first quoting *Iqbal*, 556 U.S. at 679; then quoting

*Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)).  However, "labels and conclusions" or

"formulaic recitation[s] of the elements of a cause of action will not do," and dismissal is proper where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 555, 558. A court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation marks omitted); *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (noting that "factual allegations must be sufficient to support necessary legal conclusions" and "plausibly suggest an entitlement to relief").

## II.     The Complaint is Dismissed in its Entirety

For the reasons set forth below, Plaintiff's Complaint is dismissed in its entirety.

### A.     Plaintiff's Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Claims against Equitable are Dismissed as Time-barred

In its motion to dismiss, Equitable argues that Plaintiff's claims for breach of contract and for breach of the implied covenant of good faith and fair dealing (the "contract claims") must be dismissed. *First*, Equitable argues that Plaintiff's contract claims must be dismissed as untimely. *See* Eq. Br. at 12-14. Equitable asserts that – under New York law – actions concerning contractual obligations have a six-year statute of limitations, which runs from the time of the breach, rather than from when damage results from the breach or from when the breach is discovered. *See* Eq. Br. at 12. Equitable asserts that, because the alleged breaches occurred between February 2011 (upon issuance of the policy at issue) and March 2012 (when Plaintiff's second annual segment, which was subject to a Growth Cap Rate of 11% rather than 12%, commenced), Plaintiff's contract claims are time-barred. *See* Eq. Br. at 13. Equitable further asserts that Plaintiff's contract claims cannot be saved by either the continuous wrong

doctrine, *see* Eq. Br. at 13 n.13, or equitable tolling, *see* Eq. Br. at 14; *see also* Eq. Reply at 4-5.

*Second*, Equitable asserts that Plaintiff's contract claims must be dismissed because "Plaintiff fails to plead that Equitable administered his policy other than in accordance with its terms." *See* Eq. Br. at 20. Equitable asserts, *inter alia*, that Plaintiff's policy expressly permits the charges that he seeks to challenge and that the Illustration Plaintiff alleges was misleading clearly disclosed such charges to Plaintiff. *See* Eq. Br. at 20-22.

Plaintiff argues in opposition that his contract claims are timely. Specifically, Plaintiff argues that C.P.L.R. § 203(g)'s discovery rule and equitable tolling apply to Plaintiff's contract claims. *See* Pl. Br. at 20. According to Plaintiff, tolling is warranted because Defendants' "affirmative concealment," which included "confusing and deceptive accounting," made it "impossible for a reasonable, unsophisticated consumer to discover his claims." *See* Pl. Br. at 17-18. Plaintiff further argues that "[e]ven if tolling did not apply, these claims would still be timely, because they concern obligations under a contract providing for multiple continuing performances over time." *See* Pl. Br. at 20.

With respect to Equitable's arguments regarding the substance of Plaintiff's contract claims, Plaintiff argues that his claims for breach of contract and breach of the implied covenant of good faith and fair dealing are valid. *See* Pl. Br. at 10-13. Plaintiff asserts that Equitable breached the terms of the life insurance policies at issue because Equitable "took actions that disadvantaged the insureds that were never detailed in the policy terms." *See* Pl. Br. at 10; *see also* Pl. Br. at 11-12. Plaintiff further claims that, even assuming *arguendo* that the life insurance policies at issue granted Equitable limitless discretion to cap growth rates and impose new charges, Equitable was not entitled to exercise such discretion "arbitrarily" or in "bad faith." *See* Pl. Br. at 13.

As applicable here, New York has a six-year statute of limitations for contract claims, which runs from the time of breach.  *See* N.Y. C.P.L.R. § 213(2); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) ("In New York, a breach of contract cause of action accrues at the time of the breach."); *see also Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007).  New York does not apply the discovery rule to the statute of limitations in contract actions.  *See ITT Corp. v. Lee*, 663 F. App'x 80, 84 (2d Cir. 2016) (citing *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 594 (2015)); *see also Guilbert*, 480 F.3d at 149 ("The plaintiff need not be aware of the breach or wrong to start the period running.").  Instead, the limitations period "begins to run from the time when liability for the wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury."  *See ITT Corp.*, 663 F. App'x at 84 (alteration accepted) (quoting *ACE Sec. Corp.*, 25 N.Y.3d at 594).

Where a contract provides for continuing performance over a period of time, under New York's continuing violation doctrine, each breach may begin the running of the statute of limitations anew.  *See Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 121-22 (2d Cir. 2020) (citing *Stalis v. Sugar Creek Stores, Inc.*, 295 A.D.2d 939, 940-41 (4th Dep't 2002)); *Guilbert*, 480 F.3d at 150 (collecting cases).[4]  New York courts have explained, however, that "tolling based on the [continuing violation] doctrine 'may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct.'"  *See Miller*, 979 F.3d at 122 (alteration accepted) (quoting *Salomon v. Town of Wallkill*, 174 A.D.3d 720, 721 (2d Dep't 2019)).

In certain circumstances, equitable tolling may apply so as to render claims filed outside

---

[4]    New York courts sometimes refer to the continuing violation doctrine as the continuing wrong doctrine.  *See Miller*, 979 F.3d at 122 n.2 (collecting cases).

of the statute of limitations period timely.[5]  Equitable tolling is warranted "only in rare and exceptional circumstances."  *See ITT Corp.*, 663 F. App'x at 84 (citing *Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011)).  "A litigant seeking equitable tolling must establish: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'"  *Id.* (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)).

As relevant here, the doctrine of equitable tolling "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."  *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (citation omitted).  "Equitable tolling is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient." *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 471 (S.D.N.Y. 2015) (quotation marks omitted); *see also Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491-92 (2007).  "[I]n cases where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, [the New York Court of Appeals has] held that the defendants were not estopped from pleading a statute of limitations defense."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 789 (2012) (citations omitted).

The Court concludes that Plaintiff's contract claims are time-barred.  The Complaint sets forth various alleged breaches, certain of which relate to the issuance of Plaintiff's policy and certain of which relate to Equitable's subsequent growth percentage payments.  *See* Compl.

---

[5]  As the United States Court of Appeals for the Second Circuit has observed, "New York courts and the courts of this Circuit variously use the terms 'fraudulent concealment,' 'equitable tolling,' and 'equitable estoppel,' not always with clear delineation."  *See Koral v. Saunders*, 36 F.4th 400, 409 (2d Cir. 2022); *see also id.* at 409 n.2 ("New York state courts do not distinguish between the doctrines of equitable tolling and equitable estoppel.").  The Court uses the term "equitable tolling" herein.

¶¶ 99, 102.  To the extent Plaintiff claims that Equitable's alleged conduct in connection with the issuance of the policy constituted a breach, any such breach occurred upon issuance of the policy.  To the extent Plaintiff claims that the contract was breached when Equitable allegedly failed to pay the maximum Growth Cap Rate under the policy, any such breach would have occurred as of the commencement of the first annual segment that was subject to a Growth Cap Rate of less than 12%.  The 2013 annual statement issued in connection with Plaintiff's policy clearly states that as of March 15, 2012, Plaintiff's Growth Cap Rate was 11%.  *See* ECF No. 35-8 at 4.  As such, any alleged breach in connection with the Growth Cap Rate would have occurred on March 15, 2012.  Plaintiff did not file the Complaint until October 9, 2020 – approximately eight-and-one-half years after March 15, 2012 – rendering Plaintiff's contract claims time-barred at the time the Complaint was filed.[6]

As noted above, the discovery rule does not apply in New York contract actions.  Therefore, contrary to Plaintiff's contention, *see* Pl. Br. at 17-18, 20, the tolling of Plaintiff's claims until September 2019 – when he received a revised disclosure from Equitable – is not warranted.  Because the six-year statute of limitations for New York contract claims runs from the time of breach, Plaintiff's contract claims were time-barred at the time the Complaint was filed.

Furthermore, Plaintiff has failed to plead facts demonstrating that equitable tolling is

---

[6]  Plaintiff has failed to demonstrate that the continuing violation doctrine is applicable here.  As noted above, tolling based on the continuing violation doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct.  *See Miller*, 979 F.3d at 122.  In this case, any purported ongoing harm to Plaintiff was the product of earlier allegedly unlawful conduct, rather than a result of any continuing allegedly unlawful acts.  *See Pike v. N.Y. Life Ins. Co.*, 72 A.D.3d 1043, 1048 (2d Dep't 2010); *Miller*, 979 F.3d at 122 (collecting cases); *DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.*, No. 15-CV-02259, 2021 WL 3141672, at *8-9 (S.D.N.Y. July 26, 2021).

warranted here.  Plaintiff has failed to plead facts demonstrating that he pursued his rights

diligently, that Defendants engaged in affirmative concealment warranting equitable tolling, or

that any other extraordinary circumstance stood in Plaintiff's way.  Indeed, the Complaint

indicates that Plaintiff was informed that certain monthly charges would be assessed on

Plaintiff's policy.  *See* Compl. ¶ 51 & n.2.  In addition, Plaintiff received annual account

statements that detailed the monthly charges assessed, that advised Plaintiff of the relevant

Growth Cap Rate per segment, and that provided Plaintiff with a telephone number in the event

Plaintiff wanted more information about the Growth Cap Rates that had been established.  *See,*

*e.g.*, ECF No. 35-9 at 3, 6-7; ECF No. 35-10 at 3, 6-7; *see also* Compl. ¶ 145(a).  Moreover,

although Plaintiff argues that he pursued his claims as soon as he became aware of the

Department report on its audit examination of Equitable's insurance marketing activities, *see* Pl.

Br. at 17-18, Plaintiff did not file the instant Complaint until more than three years after the

Department released its report, *see* Compl. ¶ 30.  The facts as alleged in the Complaint fail to

demonstrate that "rare and exceptional circumstances" exist as to warrant equitable tolling here.

Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair

dealing are dismissed as time-barred.

**B.     Plaintiff's New York General Business Law Section 349 Claims are
Dismissed as Time-barred**

In its motion to dismiss, Equitable argues that Plaintiff's claims pursuant to New York

General Business Law § 349 ("Section 349") must be dismissed as time-barred.  *See* Eq. Br. at

15-16.  Equitable asserts that an action seeking relief under Section 349 must be commenced

within three years of the act of deception or within three years of when "unrealistic expectations"

were not met, and that no discovery rule applies to extend this statute of limitations.  *See* Eq. Br.

at 15 & n.15.

Equitable additionally argues that Plaintiff has failed to plead a violation of Section 349. *See* Eq. Br. at 22-24. On this point, Equitable argues that the challenged disclosures were not materially misleading because Equitable clearly disclosed the terms at issue. *See* Eq. Br. at 23-24. In his motion to dismiss, Feigenbaum joins Equitable's arguments in favor of dismissal of Plaintiff's Section 349 claims. *See* Feigenbaum Br. at 1.

Plaintiff argues that his Section 349 claims are timely. Plaintiff asserts that New York's statutory discovery tolling applies to Plaintiff's Section 349 claims. *See* Pl. Br. at 18. Plaintiff further asserts that, even if statutory tolling did not apply, his Section 349 claims "would be tolled as a matter of equity." *See* Pl. Br. at 19. Plaintiff argues that the deceptive statements in the Disclosures were "inherently self-concealing" such that equitable tolling should apply. *See* Pl. Br. at 19.

Plaintiff additionally argues that his claims under Section 349 mirror successful claims in other cases in this Circuit. *See* Pl. Br. at 7. According to Plaintiff, the decisions in those cases make clear that Defendants are liable under Section 349 for misleading policy illustrations. *See* Pl. Br. at 8.

Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *See* N.Y. Gen. Bus. Law § 349(a). Section 349 claims are subject to a three-year limitations period. *See Corsello*, 18 N.Y.3d at 789. The New York Court of Appeals has held that the statute of limitations "runs from the time when the plaintiff was injured." *See id.* at 789-90 (rejecting argument that statute of limitations for Section 349 runs "from the date when the plaintiff learns, or reasonably should learn, that he or she has been deceived"); *see also Wender v. Gilberg Agency*, 276 A.D.2d 311, 312 (1st Dep't 2000) (noting that plaintiff's Section 349 claims were "time-barred as the three-year limitations

period set forth in CPLR 214(2) applies to causes of action predicated thereon and the date of

discovery rule is not applicable and cannot serve to extend that limitations period").  The date of

injury for the purposes of this analysis can vary depending on the circumstances: in a case

involving alleged omissions or misrepresentations, the injury occurs when the omission or

misrepresentation was made; in a case where statements or omissions created unrealistic

expectations, the injury occurs when those unrealistic expectations were actually not met.  *See*

*Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239

F. Supp. 3d 761, 788-89 (S.D.N.Y. 2017); *see also Maitland v. Fishbein*, No. 15-CV-05845,

2019 WL 1338591, at *6 (E.D.N.Y. Mar. 7, 2019), *report and recommendation adopted*, No. 15-

CV-05845, 2019 WL 1333262 (E.D.N.Y. Mar. 22, 2019).

Courts have considered the merits of equitable tolling arguments in connection with

Section 349 claims.  *See DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.*, No. 15-CV-

02259, 2021 WL 3141672, at *9 n.6 (S.D.N.Y. July 26, 2021) (collecting cases).  Courts have

also suggested that equitable tolling might apply when alleged misrepresentations are "inherently

self-concealing."  *See Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668,

697-700 (S.D.N.Y. 2019); *see also Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-

08098, 2016 WL 4473016, at *6 (S.D.N.Y. Aug. 22, 2016).

In *Corsello*, the New York Court of Appeals explicitly rejected the argument that the

statute of limitations runs "from the date when the plaintiff learns, or reasonably should learn,

that he or she has been deceived."  *See* 18 N.Y.3d at 789-90.  As such, Plaintiff's argument that

his claims should be statutorily tolled until September 2019, when Equitable sent him a revised

disclosure, *see* Pl. Br. at 18, is unavailing.[7]

Plaintiff also has failed to demonstrate that equitable tolling applies to his Section 349 claims.  As noted in the context of Plaintiff's contract claims, Plaintiff has failed to plead facts demonstrating that he pursued his rights diligently or that some extraordinary circumstance stood in his way.  Furthermore, Plaintiff has failed to demonstrate that the documents at issue were "self-concealing."  Plaintiff's allegation that "[t]here was nothing in the statements provided to him that could have made him aware of [his] claims," *see* Compl. ¶ 73, runs contrary to the information contained in the annual statements, *see* ECF Nos. 35-7 through 35-12, 35-14, 35-15, 35-17, and is otherwise too conclusory for the Court to determine that equitable tolling is warranted here.

Plaintiff's Section 349 claims are dismissed as time-barred.

### C.   Plaintiff's New York Insurance Law Section 4226 Claims are Dismissed as Time-barred

Equitable raises many of the same arguments with respect to Plaintiff's New York Insurance Law § 4226 ("Section 4226") claims that it raises with respect to Plaintiff's Section 349 claims.  Equitable asserts that Plaintiff's Section 4226 claims are "time-barred for the same reason" that his Section 349 claims are time-barred, and cites several cases in support of its argument that Plaintiff's Section 4226 claims are untimely.  *See* Eq. Br. at 16 & n.16.  Equitable additionally argues that Plaintiff has failed to plead a claim under Section 4226 because

---

[7]   At oral argument, Plaintiff clarified that he is not pursuing his Section 349 claims under an "unrealistic expectations" theory.  *See* Tr. at 19.  Plaintiff's Section 349 claims would, in any event, be untimely even under this theory because Plaintiff's unrealistic expectations as to the charges assessed would not have been met as of the date that he received the first account statement informing him of the charges assessed, *see* ECF No. 35-7 at 2-3, and his unrealistic expectations as to the Growth Cap Rate credited would not have been met as of the date that he received the first account statement informing him that a Growth Cap Rate of less than 12% was credited, *see* ECF No. 35-8 at 4 – both of which dates were more than three years prior to the filing of the instant action.

Equitable administered Plaintiff's policy in accordance with its terms, *see* Eq. Br. at 22-23, and because Plaintiff has failed to plead his Section 4226 claims with particularity as Federal Rule of Civil Procedure 9(b) requires*, see* Eq. Br. at 24-25.[8]

In his motion to dismiss, Feigenbaum joins the arguments raised by Equitable with regard to Plaintiff's Section 4226 claims.  *See* Feigenbaum Br. at 1.  In addition to the arguments advanced by Equitable, Feigenbaum asserts that Plaintiff's Section 4226 claim against him must be dismissed because "the statute does not apply to him."  *See* Feigenbaum Br. at 9.  According to Feigenbaum, Section 4226 "prohibits insurers from making misrepresentations, misleading statements and incomplete comparisons," and Feigenbaum is an insurance broker, not an insurer. *See* Feigenbaum Br. at 9 (emphasis omitted).

Plaintiff contends that his Section 4226 claims mirror successful claims brought in other cases.  *See* Pl. Br. at 7-8.  Plaintiff, *inter alia*, cites several cases that he claims support his contention that Defendants can be held liable for misleading insurance policy illustrations and disclosure statements – including with respect to the "bait-and-switch tactics" that Plaintiff alleges Defendants employed here.  *See* Pl. Br. at 8-9.  Plaintiff additionally contends that the Complaint "allege[s] with detail how Defendants crafted their sale documents to be deliberately incomplete in order to deceive the Class of insureds here."  *See* Pl. Br. at 10.

With regard to timeliness, Plaintiff asserts that New York's statutory discovery tolling applies to Plaintiff's Section 4226 claims and that Plaintiff's Section 4226 claims would be tolled

---

[8]  On March 10, 2023, Equitable filed a letter informing the Court that the decision in *Plavin v. Group Health Incorporated*, 323 F. Supp. 3d 684 (M.D. Pa. 2018), which Equitable had cited in support of its argument that Rule 9(b) of the Federal Rules of Civil Procedure applies to Section 4226 claims, had been vacated by the United States Court of Appeals for the Third Circuit.  *See* ECF No. 45; *see also* Tr. at 21, 29-30 (discussing the Third Circuit's decision in *Plavin v. Grp. Health Inc.*, No. 18-2490, 2021 WL 2026868 (3d Cir. May 21, 2021)).

as a matter of equity in any event.  *See* Pl. Br. at 18-19.

With regard to Feigenbaum's argument that Section 4226 does not apply to him, Plaintiff contends that "even if this were true, brokers are liable under the GBL and similar law for providing consumers deceptive sale documents."  *See* Pl. Br. at 23.  In his reply, Feigenbaum asserts that Plaintiff has not opposed Feigenbaum's motion to the extent it seeks dismissal of Plaintiff's Section 4226 claim because the statute is inapplicable to Feigenbaum, and therefore this claim should be deemed abandoned and dismissed as against Feigenbaum.  *See* Feigenbaum Reply at 6.

Section 4226 provides, *inter alia*, that "[n]o insurer authorized to do in this state the business of life, or accident and health insurance, or to make annuity contracts shall . . . issue or circulate, or cause or permit to be issued or circulated on its behalf, any illustration, circular, statement or memorandum misrepresenting the terms, benefits or advantages of any of its policies or contracts."  *See* N.Y. Ins. Law § 4226(a)(1); *see also* N.Y. Ins. Law § 4226(a)(5)-(6).

A cause of action based upon a violation of the New York Insurance Law is governed by a three-year statute of limitations.  *See, e.g.*, *Roumi v. Guardian Life Ins. Co. of Am.*, 191 A.D.3d 911, 912 (2d Dep't 2021); *Dolce v. Nw. Mut. Life Ins. Co.*, 272 A.D.2d 432, 432 (2d Dep't 2000); *Odierna v. RSK, LLC*, 171 A.D.3d 769, 771 (2d Dep't 2019); *see also Russo v. Mass. Mut. Life Ins. Co.*, 274 A.D.2d 878, 879-80 (3d Dep't 2000) (not applying discovery rule to Section 4226 claim that was filed outside of three-year statute of limitations period), *rev'd sub nom. on other grounds Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201 (2001).  New York courts have suggested that a cause of action under Section 4226 is untimely if commenced more than three years after the insurance policy was issued or sold.  *See Dolce*, 272 A.D.2d at 432; *Farokhi v. The Guardian Life Ins. Co. of Am.*, No. 0603093/2007, 2008 WL 3996274, at *2

(N.Y. Sup. Ct. Aug. 25, 2008); *see also Pike v. N.Y. Life Ins. Co.*, 72 A.D.3d 1043, 1047-48 (2d Dep't 2010) (referencing dates on which policies were purchased in determining timeliness of New York Insurance Law claim).

The Court concludes that Plaintiff's Section 4226 claims – like Plaintiff's Section 349 claims – are time-barred.[9]  The authorities cited by Plaintiff fail to demonstrate that C.P.L.R. § 203(g) is properly applied to Section 4226 claims.[10]  Indeed, Plaintiff has failed to identify any case in which a court applied the discovery rule to toll a Section 4226 claim.  And, Plaintiff has failed to demonstrate that equitable tolling applies here.

Plaintiff's Section 4226 claims are dismissed as time-barred.

### D.    Plaintiff's Unjust Enrichment Claim Against the Broker Defendants is Dismissed as Time-barred

The Sixth Cause of Action – for unjust enrichment – is asserted against the Broker

---

[9]  Because the Court concludes that Plaintiff's Section 4226 claims are time-barred, the Court need not – and does not – address Feigenbaum's arguments that Section 4226 does not apply to insurance brokers and that Plaintiff has abandoned his Section 4226 claim as against Feigenbaum.  *See* Feigenbaum Reply at 6; *see also* Tr. at 24-25.  The Court also need not – and does not – reach the question of whether Federal Rule of Civil Procedure 9(b) applies to Section 4226 claims or whether Section 4226 otherwise contains a scienter requirement.  *See* Eq. Br. at 24; *see also* Tr. at 20-21.

[10]  Plaintiff's reliance on *Anthoine v. Lord, Bissell & Brook*, 284 A.D.2d 233, 233 (1st Dep't 2001), *see* Pl. Br. at 18-19, is misplaced as the plaintiff in that case brought several different causes of action and the *Anthoine* court's mention of C.P.L.R. § 203(g) was not tied to any particular cause of action, let alone a Section 4226 claim.  *See* 284 A.D.2d at 233.  Plaintiff's invocation of *Dornberger v. Metropolitan Life Insurance Company*, 961 F. Supp. 506 (S.D.N.Y. 1997) also is unavailing.  *See* Pl. Br. at 18; *see also* Tr. at 28.  Although the *Dornberger* court concluded that claims pursuant to Section 4226 are subject to a six-year statute of limitations and cited C.P.L.R. § 203(g) in a footnote in connection with this determination, *see Dornberger*, 961 F. Supp. at 549 & n.44, the *Dornberger* court recognized that the case law then in existence did not provide an "easy answer" as to the applicable statute of limitations for Section 4226 claims, and held that plaintiff's Section 4226 claims were timely filed without applying C.P.L.R. § 203(g), *see id.* at 548-49.  As noted above, subsequent New York state court decisions confirm that Section 4226 claims seeking damages are subject to a three-year limitations period.

Defendants only.  *See* Compl. ¶¶ 129-132.  In his motion to dismiss, Feigenbaum argues that Plaintiff's unjust enrichment claim must be dismissed for two reasons.  *First*, Feigenbaum argues that Plaintiff's unjust enrichment claim is time-barred because "an unjust enrichment claim that is not distinguishable from a breach of contract cause of action must be commenced within the six-year statute of limitations set forth in New York Civil Practice Law and Rules § 213(2)."  *See* Feigenbaum Br. at 6.  *Second*, Feigenbaum argues that Plaintiff has failed to plead an actionable claim for unjust enrichment.  *See* Feigenbaum Br. at 7-8.  According to Feigenbaum, this is so because Plaintiff's unjust enrichment claim is duplicative of Plaintiff's breach of contract and statutory fraud theories, *see* Feigenbaum Br. at 7-8, and because Plaintiff has failed to plead that the policy he received was illusory, *see* Feigenbaum Br. at 8.

In response, Plaintiff argues that Plaintiff's unjust enrichment claim was tolled due to Defendants' alleged concealment of certain information regarding the policy.  *See* Pl. Br. at 23.  Plaintiff additionally asserts that the unjust enrichment claim is not duplicative of Plaintiff's other claims.  *See* Pl. Br. at 23.  According to Plaintiff, the unjust enrichment claim is not duplicative of Plaintiff's contract claims because Plaintiff is suing Equitable – not the Broker Defendants or Feigenbaum individually – in connection with the contract at issue.  *See* Pl. Br. at 23.  Plaintiff also attempts to distinguish a case cited by Feigenbaum for the proposition that the unjust enrichment claim is duplicative of Plaintiff's statutory claims on the basis that, in that case, "unlike here, the plaintiff tried to plead a fraud claim against the broker which was identical to the unjust enrichment claim."  *See* Pl. Br. at 23 n.18.

"Under New York law, the six-year limitations period for unjust enrichment accrues 'upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered.'"  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353,

364 (2d Cir. 2013) (quoting *Coombs v. Jervier*, 74 A.D.3d 724, 724 (2d Dep't 2010)); *see also DuBuisson*, 2021 WL 3141672, at \*16-18; *Sahebdin v. Khelawan*, No. 21-CV-02956, 2022 WL 4451005, at \*9 (E.D.N.Y. Sept. 24, 2022).

An unjust enrichment claim requires a plaintiff to prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *See Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011). An unjust enrichment claim is "available only in unusual situations." *See Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018) (quotation marks omitted). Notably, "unjust enrichment is not a catchall cause of action to be used when others fail." *See Corsello*, 18 N.Y.3d at 790.

An unjust enrichment claim is not available where it "simply duplicates, or replaces, a conventional contract or tort claim." *See id.* at 790-91 (collecting cases). However, "if the subject-matter of an unjust enrichment claim is not covered by a valid, enforceable contractual obligation, that claim is not duplicative and need not be dismissed based solely on the existence of a breach of contract claim." *See Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267, 274 (E.D.N.Y. 2021) (quotation marks omitted).

Plaintiff's unjust enrichment claim must be dismissed as time-barred. Plaintiff filed the Complaint more than six years after the issuance of the policy – the allegedly wrongful act giving rise to a duty of restitution. As set forth above, the applicable six-year limitations period does not run from the time when the facts constituting the alleged fraud are discovered. And, as noted above in the context of Plaintiff's other causes of action, Plaintiff cannot rely on equitable tolling to save his claim. *See DuBuisson*, 2021 WL 3141672, at \*18 n.10.

Plaintiff's unjust enrichment claim is dismissed as time-barred.[11]

### E.   Plaintiff's RICO Claims are Dismissed for Failure to State a Claim

In its motion to dismiss, Equitable advances several arguments as to why Plaintiff's civil RICO claims should be dismissed. *See* Eq. Br. at 16-20, 22-24. Feigenbaum joins in these arguments. *See* Feigenbaum Br. at 1.

*First*, Equitable argues that Plaintiff's civil RICO claims are subject to a four-year limitation period "running from when he actually discovered his alleged injury or from when a reasonably diligent investigation would have revealed the injury to a person of reasonable intelligence." *See* Eq. Br. at 16 (quotation marks omitted). Equitable asserts that the 2012 annual statement Plaintiff received informed Plaintiff regarding the charges assessed on his policy and the 2013 annual statement informed Plaintiff regarding a change in the Growth Cap Rate. *See* Eq. Br. at 17. Equitable asserts that Plaintiff's RICO claims were therefore time-barred by February 2017 at the latest. *See* Eq. Br. at 17.

*Second*, Equitable argues that Plaintiff has failed to plead a "pattern of racketeering activity." *See* Eq. Br. at 17. Equitable argues this is true for three reasons: (1) Plaintiff's RICO allegations appear to simply be restated versions of his contract claims, (2) the alleged fraudulent acts occurred in connection with a single transaction and therefore cannot constitute a pattern of racketeering activity, and (3) Plaintiff has not pleaded any predicate acts of fraud with particularity with respect to any person other than himself. *See* Eq. Br. at 17-19.

*Third*, Equitable argues that Plaintiff's RICO claims must be dismissed because Plaintiff

---

[11] Because Plaintiff's unjust enrichment claim is time-barred, the Court need not – and does not – reach Feigenbaum's other arguments related to Plaintiff's unjust enrichment claim, including the argument that Plaintiff's unjust enrichment claim is duplicative of Plaintiff's other causes of action.

has failed to plead a RICO enterprise.  *See* Eq. Br. at 19-20.  On this point, Equitable asserts that "hub-and-spoke" allegations do not sufficiently plead a RICO enterprise and that dismissal of Plaintiff's RICO claims is therefore warranted.  *See* Eq. Br. at 19-20.

*Fourth*, Equitable argues that Plaintiff's RICO claims should be dismissed because "Plaintiff has failed to allege any underlying acts of fraud," because "[h]is Policy was administered in accordance with its terms and as it was represented in the Illustration."  *See* Eq. Br. at 24.

In opposition, Plaintiff contends that the Complaint states timely RICO claims.  *See* Pl. Br. at 13-17, 20-21.

On the timeliness issue, Plaintiff asserts that the Second Circuit "applies a discovery accrual rule in RICO cases that protects victims of corrupt enterprises, who, like Plaintiff, are deceived about the scheme's existence as it unfolds."  *See* Pl. Br. at 20 (quotation marks omitted).  Plaintiff contends that the law does not impose an inquiry requirement on RICO claimants, and that "[e]ven sophisticated financial experts with deep experience in insurance policies and the like are not deemed to have had 'constructive notice' to commence their own 'inquiry' into the scheme."  *See* Pl. Br. at 21 (citation omitted).  Plaintiff asserts that he filed suit within a few months of learning of Defendants' scheme.  *See* Pl. Br. at 21.  Plaintiff additionally argues that his RICO claims are properly tolled in light of Equitable's affirmative concealment "in the form of both deceptive disclosure documents and gimmicky accounting."  *See* Pl. Br. at 21.

In addition, Plaintiff asserts that the Complaint states valid RICO claims.  Plaintiff asserts that Defendants' "nearly a decade's worth" of mailings and wire transactions in connection with Plaintiff's policy constitute predicate acts sufficient to satisfy RICO's "pattern" element.  *See* Pl.

Br. at 14.  Plaintiff analogizes to *Dornberger v. Metropolitan Life Insurance Company*, 961 F. Supp. 506 (S.D.N.Y. 1997) to suggest that Plaintiff has sufficiently alleged a pattern of racketeering activity here.  Plaintiff also cites additional cases to suggest that "[o]ther courts in cases involving fraudulently sold life insurance, have similarly rejected [the] argument that a RICO pattern cannot emanate from life insurance sales."  *See* Pl. Br. at 14-15.  Plaintiff asserts that "[l]ife insurance policies anticipate a series of transactions between insurer and insured over many years, each one furthering the fraud because the policy was sold on false promises."  *See* Pl. Br. at 14 (emphasis omitted).

Plaintiff further asserts that Plaintiff has adequately pleaded a RICO enterprise, which Plaintiff contends is a "low hurdle" to clear.  *See* Pl. Br. at 16.  According to Plaintiff, the Complaint alleges "with particularity how [Equitable] exerted centralized control over independent brokers throughout the country in an enterprise scheme centered on low-value life insurance."  *See* Pl. Br. at 16 (citing Compl. ¶¶ 16, 65, 95).  Plaintiff argues that insurers and insurance brokers can comprise a RICO enterprise "where, as here, the brokers are independently employed yet operate under a 'system of authority' by which the insurer 'guided the operation of the' scheme."  *See* Pl. Br. at 16 (citation omitted).  Plaintiff additionally contends that the Moving Defendants' argument that "the scheme must be regarded as mere business activity fails," because Defendants' actions were fraudulent.  *See* Pl. Br. at 17.

In the Complaint, Plaintiff alleges both substantive RICO and RICO conspiracy claims. *See* Compl. ¶¶ 133-158.  Plaintiff alleges that each Defendant violated 18 U.S.C. § 1962(c) because Defendants "conducted or participated, directly or indirectly, in the conduct of the [e]nterprises' affairs through the pattern of racketeering activity."  *See* Compl. ¶ 153.  Plaintiff also alleges that "each Defendant has knowingly agreed and conspired to violate the provisions

25

of 18 U.S.C. § 1962(c) . . . and has thus violated 18 U.S.C. § 1962(d)." *See* Compl. ¶ 154.

18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *See* 18 U.S.C. § 1962(c).  To state a claim for relief under § 1962(c), "a plaintiff must show (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an[] interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *See Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (quotation marks omitted); *see also Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 625 (2d Cir. 2020) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

18 U.S.C. § 1961(4) defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4).  With regard to RICO enterprises, the Second Circuit has noted that "[p]roof that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates, is not enough to show that the individuals were members of an enterprise." *See D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018) (alterations accepted) (quotation marks omitted).  Courts in this Circuit have held that a plaintiff fails to plead the existence of a RICO enterprise when a plaintiff "fail[s] to plead facts demonstrating interpersonal relationships among [defendants] and that they acted as a unit with a common purpose." *See Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-01861, 2021 WL 960394, at *9 (E.D.N.Y. Mar. 15, 2021), *aff'd*, No. 21-847, 2022 WL 480475

(2d Cir. Feb. 17, 2022); *Negron v. Cigna Health & Life Ins.*, 300 F. Supp. 3d 341, 365-66 (D. Conn. 2018); *see also Dynarex Corp. v. Farrah*, No. 18-CV-07072, 2019 WL 2269838, at *3 (S.D.N.Y. May 28, 2019); *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, No. 20-CV-05428, 2022 WL 4448621, at *15 (S.D.N.Y. Sept. 23, 2022) (collecting cases).

18 U.S.C. § 1962(d) makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." *See* 18 U.S.C. § 1962(d).  To state a RICO conspiracy claim, "a plaintiff must allege the existence of an agreement to violate RICO's substantive provisions." *See Williams*, 889 F.3d at 124; *see also Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) (noting that, to state a claim under § 1962(d), "plaintiff must allege that the defendant knew about and agreed to facilitate the scheme" (quotation marks omitted)).  In order to establish a RICO conspiracy, a plaintiff must demonstrate that defendants "agreed to form and associate themselves with a RICO enterprise," that defendants "agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise," and that "if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244-45 (2d Cir. 1999).

As to timeliness, in RICO cases the Second Circuit has applied "a discovery accrual rule, under which the limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury." *Cohen*, 711 F.3d at 361 (quotation marks omitted).  "In other words, the limitations period does not begin to run until the plaintiff has actual or inquiry notice of the injury." *Id.* (alteration accepted) (quotation marks omitted).

The Court concludes that Plaintiff has failed to plead a RICO enterprise.  Plaintiff asserts alternative theories as to how Defendants constitute an enterprise for RICO purposes:

> a. Equitable and each of the Broker Defendants constitute a series of distinct individual "enterprises" – one enterprise per Agent Defendant . . .; or, in the alternative,
>
> b. Equitable and the Broker Defendants constitute a distinct "enterprise." Each Defendant is employed by or associated with each enterprise . . . .

*See* Compl. ¶ 136.  Plaintiff additionally asserts that "Equitable and each of the Broker Defendants, formed distinct associations-in-fact pursuant to RICO."  *See* Compl. ¶ 137.

In support of his assertion that Defendants constitute a RICO enterprise – or enterprises – Plaintiff argues that the Complaint "detail[s] with particularity how [Equitable] exerted centralized control over independent brokers throughout the country in an enterprise scheme centered on low-value life insurance," citing paragraphs 16, 65, and 95 of the Complaint in support of this argument.  *See* Pl. Br. at 16.  In these paragraphs, Plaintiff alleges that "Equitable created or directed the creation of company-prepared marketing materials and company-designed sales tactics as part of a scheme to induce customers to purchase Replacement Policies [and the] Broker Defendants then independently executed the scheme by using the deceptive sales materials," *see* Compl. ¶ 16, that "Equitable instructed, trained, directed or otherwise incentivized the Broker Defendants to provide incomplete disclosure to their customers," *see* Compl. ¶ 65, and that "Equitable either incentivized, caused, or directed its agents to scrimp as much as possible on required disclosures concerning the costs of replacement insurance and the material benefits of remaining with existing insurance," *see* Compl. ¶ 95.  The Court is not bound to accept these conclusory assertions – which are insufficiently supported by factual allegations in the Complaint – as true.  *See Faber*, 648 F.3d at 104 (noting that a court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions" (quotation marks omitted)); *see also Ruston*, 610 F.3d at 59 (noting that "factual allegations must be sufficient to support necessary legal conclusions" and "plausibly suggest an

entitlement to relief").

Plaintiff's representation that the Complaint "detail[s] with particularity how [Equitable] exerted centralized control over independent brokers throughout the country in an enterprise scheme centered on low-value life insurance," *see* Pl. Br. at 16, is belied by the Complaint itself. *See generally* Compl.  Notably, the Complaint does not contain factual allegations regarding any such "control."  The Complaint does not contain factual allegations regarding any communications Equitable had with any Broker Defendant, any particular incentives Equitable provided to any Broker Defendant, or any concrete information at all regarding the nature of Equitable's relationship with any Broker Defendant.  The Complaint also does not contain specific factual allegations as to the conduct of any Broker Defendant other than Feigenbaum, and even as to Feigenbaum, does not contain specific allegations regarding the nature of his relationship with Equitable, communications with Equitable, or particular incentives provided by Equitable.  Importantly, the Complaint does not include any non-conclusory factual allegations that any Broker Defendant was aware of Equitable's purported scheme or that any Broker Defendant used the sales materials at issue in order to advance a common purpose with Equitable (as opposed to, for example, advancing an individual self-interest).  The Complaint also is devoid of factual allegations regarding any relationship that the Broker Defendants had with one another – the Complaint does not, for example, contain allegations that the Broker Defendants communicated with one another, coordinated with one another, or maintained interpersonal relationships with one another.

The allegations in the Complaint fail to sufficiently allege that Equitable and any Broker Defendant – or Equitable and the Broker Defendants collectively – acted as a unit with a

common purpose.  Plaintiff has failed to plausibly allege a RICO enterprise.[12]

Further, the Complaint does not allege facts demonstrating that the Broker Defendants – or Feigenbaum individually – entered into an agreement with Equitable to facilitate the alleged scheme or to otherwise violate RICO's substantive provisions.  *See generally* Compl.  Indeed, as noted above, the Complaint fails to sufficiently allege facts indicating that the Broker Defendants – or Feigenbaum individually – even knew about Equitable's purported scheme.  Plaintiff's conclusory assertion that Defendants "knowingly agreed and conspired to violate the provisions of 18 U.S.C. § 1962(c)," *see* Compl. ¶ 154, is insufficient to plausibly allege a RICO conspiracy claim.  *See Faber*, 648 F.3d at 104; *Ruston*, 610 F.3d at 59.[13]

Plaintiff's RICO claims are dismissed.[14]

---

[12] The limited authority Plaintiff cites in support of his argument that he has adequately pleaded a RICO enterprise, *see* Pl. Br. at 16-17, is distinguishable.  *See, e.g.*, *Neufeld v. Cigna Health & Life Ins. Co.*, No. 17-CV-01693, 2018 WL 4158377, at *3, *15 (D. Conn. Aug. 30, 2018) (allegations that defendant "orchestrated and directed its managers' actions and prevented managers and providers from divulging the scheme" at issue through, *inter alia*, the use of "gag clauses" in provider manuals and "uniform contracts and agreements" that required managers to make intentional misrepresentations); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071, 1081 (S.D. Cal. 2006) (allegation of the "existence of a common communication network through which enterprise participants share information on a regular basis for the purposes of fraudulently selling deferred annuities to senior citizens"); *Dornberger*, 961 F. Supp. at 527 (allegations that defendants "reached an agreement to commit predicate acts of fraud," that defendants "were aware of the alleged fraudulent nature of the representations and omissions," and as to "the role which each Defendant played in the conspiracy" supported an inference that all defendants "understood the scope of the scheme and agreed to further it").

[13] When asked at oral argument whether Plaintiff was aware of any facts that could be added to the Complaint to demonstrate that the Broker Defendants understood the scope of the purported scheme, agreed to further it, or otherwise interacted with one another, Plaintiff did not proffer any additional factual allegations that could serve to save his RICO claims and did not request leave to amend his Complaint to add any such allegations.  *See* Tr. at 34-36.

[14] The Court need not – and does not – reach the Moving Defendants' remaining arguments related to Plaintiff's RICO claims.

**F.      Plaintiff's Claims Pursuant to the Unfair Business Practices Statutes of Other States are Dismissed**

Equitable argues that Plaintiff's Fifth Cause of Action must be dismissed because "Plaintiff lacks standing to assert the Complaint's claims for relief under other states' statutes on behalf of members of the putative state sub-classes." *See* Eq. Br. at 25.  Feigenbaum joins this argument.  *See* Feigenbaum Br. at 1.

Plaintiff argues that it would be premature to dismiss the additional state statutory claims at this stage.  *See* Pl. Br. at 9 n.5.

In circumstances in which each of a plaintiff's individual claims have been dismissed, courts have determined that a plaintiff is not entitled to pursue claims arising under the laws of other states on behalf of unnamed putative class members.  *See MacNaughten v. Young Living Essential Oils, LC*, 575 F. Supp. 3d 315, 335-36 (N.D.N.Y. 2021); *see also Leonard v. Abbott Lab'ys, Inc.*, No. 10-CV-04676, 2012 WL 764199, at *7 (E.D.N.Y. Mar. 5, 2012) (noting that "generally, the dismissal of the named plaintiffs claims before a motion for class certification has been filed would result in the dismissal of the complaint"); *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 76 (E.D.N.Y. 2008) ("The unnamed class members are not technically part of the action until the court has certified the class; therefore, once the named plaintiffs' claims are dismissed, there is no one who has a justiciable claim that may be asserted."); *Housey v. Procter & Gamble Co.*, No. 21-CV-02286, 2022 WL 874731, at *9 (S.D.N.Y. Mar. 24, 2022), *aff'd sub nom. Housey v. Proctor & Gamble Co.*, No. 22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022).

Here, Plaintiff's Complaint fails to state an individual claim upon which relief can be granted, and accordingly, Plaintiff's claims pursuant to the unfair business practices statutes of other states are dismissed.

\* \* \*

In sum, dismissal of the Complaint in its entirety is warranted.  Plaintiff's contract, state statutory, and unjust enrichment claims are time-barred; Plaintiff's RICO claims are insufficiently pled; and Plaintiff's claims pursuant to the unfair business practices statutes of other states do not survive here, where Plaintiff's individual claims are dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Equitable's Motion to Dismiss, ECF No. 33, and Defendant Feigenbaum's Motion to Dismiss, ECF No. 36, are GRANTED, and the Complaint, ECF No. 1, is dismissed in its entirety.

Such dismissal is without leave to amend given that Plaintiff was apprised of the Moving Defendants' view of the pleading defects in Plaintiff's Complaint by way of the Moving Defendants' requests for a pre-motion conference, *see* ECF Nos. 23-24, and the Moving Defendants' motions to dismiss, *see* ECF Nos. 33, 36; that Plaintiff did not seek leave to amend in light of the Moving Defendants' aforementioned filings, *see generally* Pl. Br.; *see also* ECF No. 26; that Plaintiff confirmed during the March 13, 2023 oral argument in connection with the instant motions that he was not seeking leave to amend, *see* Tr. at 46; and that there is no indication that Plaintiff could provide additional allegations that might cure the defects set forth above and lead to a different result, *see, e.g.*, Tr. at 34.  *See Gallop v. Cheney*, 642 F.3d 364, 369-70 (2d Cir. 2011).

The Clerk of Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: March 29, 2023
       Brooklyn, New York